Misc. Docket No. _____

---

## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

---

In Re WILLIAMS

*Petitioner.*

---

On Petition for Writ of Mandamus to the United States District Court for the Western District of Louisiana,

Case No. 3:16-CV-00777, Judge Terry A. Doughty

---

## WILLIAMS's PETITION FOR A WRIT OF MANDAMUS

Ben Williams

Williams Intellectual Property

1100 W Littleton Blvd

Ste 440

Littleton, CO 80120

o. (720) 328-5343

f. (720) 328-5297

*Attorneys for Petitioner*

[SEE ATTACHED FORM 9 FOR CERTIFICATE OF INTEREST]

# TABLE OF CONTENTS

INTRODUCTION                                                           1

RELIEF SOUGHT                                                          3

ISSUES PRESENTED                                                      3

STATEMENT OF FACTS                                                   4

REASONS WHY THE WRIT SHOULD ISSUE                          20

   I.  Indisputable Right to Issuance of the Writ                    21

      a. Order Petitioner's Admission in the Western
         District of Louisiana, Monroe Division                        21

      b. Order Limited Discovery on the District Court              24

      c. Stay the Enforcement of the Judgment
         Without Supersedeas Bond Until Appellate
         Review is Concluded                                            30

  II.   Petitioner Has No Adequate Alternative Method of
      Obtaining Relief                                              33

III.   Mandamus is Appropriate                                        36

CONCLUSION                                                            37

# TABLE OF AUTHORITIES

## CASES

*Association of Mexican-Am. Educators v. State of California*,
231 F.3d 572 (9th Cir. 2000) .............................................................. 25, 27

*ApertureNet, LLC v. Blackberry Corp.*,
No. 3:19-CV-2315-K, 2020 WL 13429993 (N.D. Tex. June 9, 2020) .................... 14

*Cheney v. U.S. Dist. Ct.*,
542 U.S. 367, 380-81 (2004) ............................................................... 21, 33

*Comcast Cable Commc'ns, LLC v. Sprint Commc'ns Co.*,
*LP,* No. CIV.A. 12-859, 2014 WL 1329063 (E.D. Pa. Apr. 2, 2014) ...................... 26

*DataTreasurey Corp. v. Wells Fargo & Co.*,
No. 2:05-CV-291 (DF), 2008 WL 11348369 (E.D. Tex. Dec. 10, 2008) ............... 26

*Hilton v. Braumskill*,
481 U.S. 770 (1987) ........................................................................ 32

*HVLPO2, LLC v. Oxygen Frog, LLC*,
949 F.3d 685 (Fed. Cir. 2020) ............................................................ 9

*Icon Laser Sols. LLC, v. Abercrombie & Fitch, Co.*,
No. 3:15-CV-3308-K, 2016 WL 6583747 (N.D. Tex. Feb. 8, 2016) ....................... 14

*In re Apple Inc.*,
979 F.3d 1332, (Fed. Cir. 2020) ........................................................... 21

*In re Evans,*
524 F.2d 1004 (5th Cir. 1975) ............................................................ 19, 21

*In re Google LLC*,
949 F.3d 1338 (Fed. Cir. 2020) ........................................................... 20

*In re Two Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litigation*,
994 F.2d 956 (1ˢᵗ Cir. 1993) ................................................. 13

*Kirkland v. Nat'l Mortgage Network, Inc.*,
884 F.2d 1367 (11th Cir. 1989) ............................................ 22

*Laitram Corp. v. NEC Corp.*,
115 F.3d 947 (Fed. Cir. 1997) .............................................. 28

*Patton v. Sec'y of Health & Human Servs.*,
25 F.3d 1021 (Fed. Cir. 1994) .............................................. 28

*Reilly v. United States*,
863 F.2d 149 (1st Cir. 1988) ................................................ 25

*Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*,
818 F.3d 1320 (Fed. Cir. 2016) ............................................ 35

*Schlumberger Techs., Inc. v. Wiley*,
113 F.3d 1553 (11th Cir. 1997) ............................................ 21

*Sprague v. Ticona Nat'l Bank*,
307 U.S. 161 (1931) ........................................................... 28

*Stauble v. Warrob, Inc.*,
977 F.2d 690 (1st Cir. 1992) ................................................ 28

*TechSearch v. Intel. Corp.*,
286 F.3d 1360 (Fed. Cir. 2002) ........................... 24, 25, 26, 27, 28, 29

*Telebuyer, LLC v. Amazon.com, Inc.*,
No. 2:13-CV-1677-BJR, 2014 WL 5312275 (W.D. Wash. Oct. 16, 2014) ............... 25

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*,
834 F.3d 562 (5th Cir. 2016) ................................................ 9

## Rules

Fed. R. Civ. P. 53 ...................................................................................24

## INTRODUCTION

Petitioner respectfully petitions this honorable Court to issue a writ of mandamus to Order the United States Court for the Western District of Louisiana, Monroe Division, to:

1.  Admit Petitioner *pro hac vice* in representation of Defendant in the above-captioned action;

2.  Stay enforcement of the judgment, which has been appealed by Plaintiffs (for more fees), without supersedeas bond;

3.  Disclose the court-appointed technical advisor's report, and all substantive communications between the technical advisor and the court; and

4.  Identify the source of a photo "recreating" a demonstration made by Plaintiff's expert at trial and taken without Defense counsel present.

This petition is urgent. Due to registration of the judgment pending reconsideration and appeal, Defendant has been forced into bankruptcy. Plaintiff is poised as the largest creditor and apt to seek Defendant's liquidation to leverage market dominance. Defendant's counsel, now a creditor, is conflicted out. Outstanding post-judgment motions elicit grounds for reconsideration and new trial

due to provably false evidence tainting the record, strongly suggesting undue bias and undue influence by the court-appointed technical advisor and overreliance by the court.

Relief by mandamus is necessary. By its action in this case, the court has established precedent for overreliance on a technical advisor in contradiction to controlling authority and in violation of Defendant's constitutional rights to due process. The district court continues to preempt Defendant's avenues for redress, effectively silencing Defendant's challenges to these manifest violations of rights to due process. Now, Defendant is denied counsel of its choice, again, without explanation or process. Meanwhile Plaintiff, a powerful presence in its home forum, continues to leverage the proceedings toward destruction of its competitor, to snap-up market share.

The entire proceeding has been tainted by unfair prejudice, a result of false evidence introduced into the record by the technical advisor who exerted undue influence on the court. The court's only argument is Defendant waived its right to due process by failing to object to the advisor's appointment, essentially foreclosing argument under the mandate rule. Yet the issue of the advisor's undue influence and the court's improper overreliance is ripe, collateral, and distinct the scope of remand. Further, as detailed below, the extent of the advisor's influence is only now

becoming clear. Because the court is reluctant to confront its own misconduct, Defendant has no other recourse than to demand relief from this Honorable Court.

## RELIEF SOUGHT

Petitioner respectfully requests this Honorable Court issue writ of mandamus to the United States Court for the Western District of Louisiana, Monroe Division, to order Petitioner's admission *pro hac vice*; to disclose the technical advisor's report and all substantive communications between the court and the technical advisor; to identify the origin of and participants in an extra-record photograph taken during trial without Defense counsel present, depicting a demonstration which the court "recreated" and improperly submitted into evidence; and, due to pending bankruptcy where Plaintiff is a majority creditor, stay enforcement of the judgment pending review without supersedeas bond.

## ISSUES PRESENTED

1. Improper denial of *pro hac vice* admission:

   a. Can a district court deny counsel *pro hac vice* admission without a hearing?

2. Disclosure of *ex parte* communications with technical advisor:

   a. Must the court disclose the nature and extent of *ex parte* communications with the technical advisor?

    b. Can a technical advisor brief a court on legal issues?

    c. Can a technical advisor author, review, and revise opinions, rulings, findings of fact, and conclusions of law for the court to adopt?

    d. Can a district court deny *de novo* review after objection to perceived overreliance on the technical advisor because a technical advisor is not subject to Federal Rule of Civil Procedure 53 as a special master?

    e. Can a technical advisor introduce evidence into a proceeding?

    f. Does introduction of false evidence by the technical establish an appearance of undue bias?

3. Stay enforcement of the judgment absent supersedeas bond:

    a. Where a judgment rests at least in part on false evidence unfairly prejudicial to Defendant and introduced by the court, and Defendant has declared bankruptcy and Plaintiffs are the majority creditor, is a stay of enforcement of the judgment proper to maintain the status quo until culmination of appellate review?

## STATEMENT OF FACTS

Petitioner first petitioned this Honorable Court to Order Petitioner's admission *pro hac vice* on March 28, 2025. *In re Ben Williams*, 25-124. In its dismissal

without prejudice, this Court advised first moving the court for reconsideration. Ex. A, 3 ("Under the circumstances, we deem it the better course to deny Mr. Williams's mandamus petition without prejudice to him first moving the district court for reconsideration of its order denying leave to appear *pro hac vice*"). Accordingly, Petitioner filed a motion to reconsider, April 4, 2025, citing authority holding the need for at least a hearing prior to denying an attorney admission. Ex. B. But, after forty-eight days (during which Plaintiffs moved to enforce the judgment while various important deadlines arose and elapsed), the court again denied Petitioner's admission. The court offered no explanation. (Dkt. No. 1032, 158 (Ex. C) ("Electronic Order denying 1006 Motion for Reconsideration re 990 Order on Motion to Appear Pro Hac Vice *and to stay proceedings [corrected to add local counsel]* filed by Ben Williams. Signed by Judge Terry A Doughty on 5/22/2025 . . .")

Certainly, Petitioner meets the requirements for admission set forth in the local rules. Petitioner is in good standing with the highest court in California. Petitioner is in good standing in the United States Court for the District of Colorado and this Honorable Court. Petitioner is in good standing before the USPTO, which has exclusive jurisdiction to review patent agent conduct and discipline patent

agents.[1] Petitioner has the moral character necessary to conduct himself properly before the court in pursuit of justice in representation of his client. *See* Ex. D, letters from attorneys who affirm Petitioner's moral competency to practice law.

Petitioner originally sought to intervene in this case pursuant to Rule 24(b) on Nov. 08, 2024, for the limited purpose of opposing Plaintiffs' accusations of inequitable conduct after Petitioner discovered false evidence in the record unfairly prejudicial to Defendant. Dkt. No. 959 (Ex. E). The false evidence concerns a video frame taken out of sequence supporting a finding of fact and conclusion of law which grossly misrepresents the content of the video as a whole.

The mispositioned image was bolstered by an unequivocally false statement, substantially prejudicial to Defendant, which asserted the finding of fact and conclusion law that Defendant had manipulated the so-called "Platinum Pets" mat to maliciously misrepresent its capacity to self-seal and effectively dupe the USPTO into issuance of Defendant's patent. Dkt. No. 931, 56 (Ex. X). The court claimed that "[a] review of the Disclosed Video shows that Mrs. Laurain placed [the mat] on the countertop with a fold in the middle of the mat, which prevented or significantly

---

[1] Petitioner was not an attorney in 2016 which the conduct complained of by opposing counsel is alleged to have occurred. Petitioner already self-reported to the Office of Enrollment and Discipline at the USPTO the district court's finding of inequitable conduct.

diminished the mat's ability to self seal." *Id.* This assertion was unequivocally false. In fact, the video does not show that Laurain placed a fold in the mat. The giant fold depicted is imaged from the end of the video, when Laurain was *returning* the mat to the countertop after lifting the mat repeatedly, singlehandedly, without evidencing surface contact self-sealing as defined in Defendant's patent.[2]

If Defendant *had* wickedly placed a fold in the mat to incapacitate its ability to self-seal as alleged, and then passed off such blatant untruth as "evidence" to the USPTO, without question, Defendant *would* have committed inequitable conduct. But this never happened. Instead, the court's finding is itself blatant untruth passed off as evidence.

The false evidence was seized upon by Plaintiffs, who sent it up to this Court to ultimately taint the remand. This Court vacated the district court's finding of obviousness as a matter of law but remanded, in significant part, for reevaluation of Defendant and Petitioner's specific intent regarding Defendant's representations of the "Platinum Pets" mat. *See* 2022-1905, Doc. 57, 17 (Ex. F) ("On remand, the district court should determine whether Ms. Laurain's and Mr. Williams'

---

[2]    The claims of the '903 Patent require that the mat can be lifted only by peeling action at the outer edge. Attempts to lift the mat by grasping the bowls or receptacles are unavailing. Conversely, the Platinum Pets mat can be lifted at places other than the outer edge, including by the bowls. *See, e.g.,* Dkt. No. 832 at 229:22-230:7 (LNC's expert admitting that the Platinum Pets mat can be lifted at places other than the outer edge).

misrepresentation of the self-sealing functionality of the Platinum Pets mat

amounted to affirmative egregious misconduct and is, therefore, per se material").

16.    The Court finds that the Disclosed Video and Appendix D misrepresents the actual functionality of the Platinum Pets Mat, because the Platinum Pet Mat exhibits self-sealing depending on how it is placed on an underlying surface.[321] A review of the Disclosed Video shows that Mrs. Laurain placed it on the countertop with a fold in the middle of the mat, which prevented or significantly diminished the mat's ability to self-seal.[322]



612. LNC 499- Disclosed Video

17.    During the bench trial, Mr. Hubbard demonstrated the self-sealing characteristic of

**Figure 1**. False evidence introduced into the record by the technical advisor that unfairly prejudiced Defendant, suggesting undue bias on the part of the technical advisor. (Highlighting added.)

Petitioner included a Special Motion to Strike the false evidence in its motion

to intervene. Dkt. 959 (Ex. G) (erroneously concluding the false evidence had been

introduced by Plaintiffs). But, despite Petitioner meeting the requirements of Rule

24(b) and mandatory authority in the Fifth Circuit regarding permissive intervention

("Federal courts should allow intervention when no one would be hurt and the greater justice could be attained," *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n,* 834 F.3d 562, 565 (5th Cir. 2016)), the court denied Petitioner's intervention just six days later, without explanation. Ex. C, 151 (Dkt. No. 966).  In doing so, the court mooted Petitioner's motion to strike outright, without comment, even though the court now admits false evidence *was* improperly introduced by the technical advisor. Dkt. 1037, 10 (Ex. H) ("[t]he screen-capture [showing a "fold" in the middle of the mat] was taken by Woloson during the playing of the video at trial"). This, by itself, should be grounds for retrial. *HVLPO2, LLC v. Oxygen Frog, LLC,* 949 F.3d 685, 689 (Fed. Cir. 2020) (relying on abuse of discretion standard in review of erroneously introduced evidence and holding that "evidentiary errors require a new trial where the error has caused substantial prejudice to the affected party" and "affected the party's substantial rights or resulted in substantial injustice") (internal citation omitted). The positioning of the image further suggests undue bias of the technical advisor (and, by extension, the court), because, watching the video, it is objectively impossible to reach such an absurd conclusion about the video's content. The screenshot *must* have been deliberate.

The false evidence is highly prejudicial and harmful to Defendant. On the one hand, it elicits clear specific intent to deceive the USPTO. On the other, it

evidences undue bias on the part of the technical advisor and, by extension, the court.

Some background is important. Petitioner was admitted to practice before the USPTO on Oct. 22, 2012. Reg. No. 70,416. With less than two years' experience as a registered patent agent, Petitioner, a solo practitioner, authored the patent application, filed July 17, 2014, which ultimately issued as Pat. No. 9,462,903 ('903 Patent), Oct. 16, 2016. The '903 Patent issued primarily due to evidence of secondary considerations of nonobviousness (not fraud). *See* Reexamination No. 90/020,135 (Ex. I, 6-7) (upholding all claims and stating that "[t]he secondary considerations, when looked at as a whole, provide sufficient evidence to support non-obviousness" and "[i]t is clear that the invention has been copied by many other entities and that the invention itself has le[d] to it[s] commercial success") (cleaned up). The invention *was* subject to industry praise, commercial success, and, perhaps most significant of all, mass copying in the market – including targeted acquisition and reverse engineering by Plaintiffs themselves. Internal communications between executives employed by Plaintiffs show Plaintiffs immediately lauded the invention and sought straightaway to replicate a competing version. *See* Defendant's Rule 59 Motion, Dkt. No. 991-1, 27 (Ex. J). *See also* Ex. K, 29-35. Notably, the invention rendered suction cups, adhesives, and mechanical fastening means in the child feeding space (an established trend in the art) obsolete.

Plaintiffs, a close competitor of Defendant, active in the same channel of trade, immediately recognized the invention's impact when witnessing demonstrations at a trade show. *See* Ex. J, Dkt. No. 991-1, 26-28. *See* Ex. K, 29-35. They quickly acquired the invention and shipped it to their manufacturers in China with the express instructions to manufacture a similar and competing version. *Id.*. Back and forth between Plaintiffs' executives and their manufacturer in China show continued attempts to perfect the competing version (to make it more "similar to the first larger mat sample that we sent you"). *Id.* These facts belie Plaintiffs' claims of obviousness.

Despite Plaintiffs' copying (undercutting assertions of obviousness and demonstrating acquired distinctiveness of Defendant's trade dress), Plaintiffs preemptively filed claims for unfair competition against Defendant under the Louisiana Unfair Trade Practices and Consumer Protection Law, June 3, 2016, several months prior to issuance of the '903 Patent. Plaintiffs haled Defendant into their home forum, Monroe, Louisiana, where Plaintiffs are a large landowner and maintain an influential presence in the local economy and in the Western District of Louisiana, Monroe Division. (Consider, Plaintiffs' lead counsel, Carol Reisman, is on a first name basis with the clerks there. For example, Ms. Reisman furnishes billing for repeated *ex parte* communications with the clerks. *See, e.g.,* Ms. Reisman's billing statements, Dkt. No. 970-3, 24-25 (Ex. L) (regarding Petitioner's motion to

intervene, showing *ex parte* communications with the court on Tuesday, Nov. 12, 2024, two days before the court denied Petitioner's intervention without explanation: "Call to and message for Ms. Crawford [clerk], 0.20 [hrs]"; "Call with Mary Bunting [clerk] and update litigation team re the same, 0.6 [hrs.]"; "Review emails from Ms. Menasco about calls with the court on Williams procedural issues and new filing by Mr. Williams (.40), 0.40 [hrs.]"; and "Exchange emails re calls to court regarding Williams' briefing, 0.10 [hrs.]").)

Shortly after issuance of the '903 Patent, on Oct. 28, 2016, Plaintiffs amended their complaint to cite claims for false advertising, false representation, unfair competition, and for declaratory judgment of noninfringement and invalidity. Defendant eazy-PZ, LLC ("EZPZ") countersued for infringement.

Initially this case was assigned to Judge Robert G. James. But on March 12, 2018, after his appointment March 7, 2018, the case was reassigned to Judge Doughty. Appointed for just five days, it is reasonable to presume Judge Doughty had not presided over a patent case before. Less than two years in at the time of his appointment, litigation was already voluminous.[3] Then, about a year into his first patent case, Judge Doughty appointed a lawyer from the Eastern District of Texas

---

[3]   Today the docket stretches over 150 pages; over 1,000 filings have been entered (many voluminous in themselves). Ex. C. LNC, a notoriously litigious party, has filed over 130 motions, racking up about $10 million in legal fees dwarfing alleged damages.

(pre-*T.C. Heartland*, the self-styled "patent court"), Scott Woloson, as technical advisor, Apr. 10, 2019. *See* Dkt. 273 (Ex. M) (appointment order). *See* Dkt. No. 272 (Ex. N) (entered the same day) (Mr. Woloson's affidavit of engagement).

Judge Doughty did not allow for input from the Parties. *Id.* Judge Doughty did not provide any timeframe for the Parties to ask questions, solicit information, or lodge objections. *Id.* The appointment was immediate and unilateral: Judge Doughty appointed Mr. Woloson as "essentially a law clerk" in a day. *Id.*

Judge Doughty's appointment order did not set forth minimum judicial safeguards. *Id.* Judge Doughty's appointment order lacked description of the technical requirements Woloson was hired to enumerate. *Id.* Instead, the appointment order stated only that "Scott Woloson is appointed to serve as the technical advisor for the [c]ourt in this case" and – mischaracterizing the role of technical advisors – "[b]ecause the technical advisor serves essentially as a law clerk to the [c]ourt and will be familiar with the technical and legal issues in this case, the [c]ourt has requested that the technical advisor assist the [c]ourt in drafting necessary orders." The rest of the order concerned Woloson's compensation and the court's power of taxation of the parties (citing *In re Two Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litigation*, 994 F.2d 956 (1st Cir. 1993), which details equitable power to apportion costs but has nothing to do with technical

advisors in patent claim construction).

Note, a technical advisor is typically *not* permitted to "draft necessary orders." *See, e.g., ApertureNet, LLC v. Blackberry Corp.,* No. 3:19-CV-2315-K, 2020 WL 13429993, art *2 (N.D. Tex. June 9, 2020) (stating that special master will "not be producing any orders, findings, or recommendations for the record" precisely because "he will be serving as an adjunct law clerk and in a technical advisor role"); *Icon Laser Sols. LLC, v. Abercrombie & Fitch, Co.,* No. 3:15-CV-3308-K, 2016 WL 6583747, at *2 (N.D. Tex. Feb. 8, 2016) (stating that "the Special Master will be serving as an adjunct law clerk and in a technical advisor role, therefore, he will not be producing any orders, findings, or recommendations for the record"). *See infra. See* Ex. W, *in toto.* Nonetheless, over the next several years, Woloson did substantially more than that.

Woloson's affidavit also did not describe the subject matter for which he was hired to tutor the court, *i.e.*, enumeration of a surface contact self-sealing integrated tableware and dining mat. Dkt. No. 272 (Ex. N). He expressly swore, "I understand and agree that I am not to engage in any independent investigation of the litigation, provide evidence to the [c]ourt, or contact any party or witness in this action." *Id.* He swore he had no connection with either Party yet failed to disclose he was concurrently serving as technical advisor in two other cases in the same district,

under the same judge, and in which Plaintiff was also a party. *Id.* These cases are not insignificant. These three cases represent more than 14% of Woloson's income as a technical advisor in over a decade. Ex. O. In the Western District of Louisiana, Monroe Division, Woloson has billed almost half a million dollars (more than $425,250). Each of these cases has two things in common: LNC is a litigant and Judge Doughty is presiding. *See* FIGS. 2 and 3, ʙᴇʟᴏᴡ.



**Figure 2** Mr. Woloson's billing as a technical advisor and (in at least one case, as a special master), from the cases listed on his website for which information was available via West Law. LNC's cases appear significantly above average across any district. This case, however, is a clear outlier and anomalous – especially for a child's feeding mat, which is not a technically complex invention.



**Figure 3.** Cases with LNC as litigant with Judge Doughty presiding are significantly more lucrative for Mr. Woloson, outlying all other cases, including cases wherein Mr. Woloson was appointed as a special master. This case, wherein Mr. Woloson has been able to bill almost $300,000, appears significantly unusual.

From the data provided on his website and for which information is available via West law, of 124 cases in which Woloson has served as a technical advisor or special master excluding the Western District of Louisiana, Monroe Division (overwhelmingly in the Eastern District of Texas), Woloson's average billing is $22,445.17 per case. Ex. O. However, in the instant case alone, Woloson has billed $287,237.50 – orders of magnitude over the average billing for a technical advisor anywhere (and 1,280% his typical fee). Woloson's prolonged and excessive involvement in this proceeding is clear, undeniable, and troubling.

It should quicken this Court.

Finally, on Feb. 26, 2025, the district court entered its final judgment finding Defendant liable for egregious misconduct in the prosecution of the '903 Patent. As a person materially involved in the prosecution of the patent, Petitioner was named in the court's finding of facts and conclusions of law. Ex. P, *passim*.

Woloson's extensive involvement in drafting the court's final ruling is clear. From Feb. 1 to Feb. 25, 2025, Mr. Woloson billed 102.3 hours for services which do not appear consonant with a technical advisor's role in tutoring the court on the technology in issue: "Draft/revise technical advisor report regarding Pending Motions," including "Review/analyze United States Court of Appeals for the Federal Circuit Order [Doc. No. 938]; LNC's Notice of Application to Tax Costs, Defendant EPZ response to the motion, and LNC's reply. [Doc Nos. 866, 899 & 904]; LNC's Motion for Attorney's Fees and Expenses Pursuant to 35 U.S.C. § 285, 28 U.S.C. § 1927 and/or the Court's Inherent Power, EZPZ's and Attorney Jordan S. Bolton's response to the motion, and LNC's reply [Doc. Nos. 877, 911, 922 & 924]; and LNC's Supplemental Brief in Support of Its Previously Filed Motion for Attorneys' Fees and Expenses, EZPZ's response to the supplemental brief, and LNC's supplemental reply. [Doc Nos. 951, 964 & 970]; EZPZ's Motion for Attorney's Fees Pursuant to La. Rev. Stat. § 51: 1409 and 15 U.S.C. § 1117(a), LNC's response to the motion, and EZPZ's reply [Doc. nos. 874, 915 & 926] (collectively

'Pending Motions')." The invention is not complex; there is no evidence Woloson briefed the court on the property of silicone substrates or the effects of atmospheric pressure. Ex. Q, 32-34. Rather, the entries seem to concern legal issues Woloson, as a technical advisor, was not competent to perform.

After these 102.3 hours, over twenty-five days, Woloson's billing culminated the same time the court filed its ruling. Final judgment was entered the next day, Feb. 26, 2025.  But Woloson is not an Article III judge, and, under controlling authority, a technical advisor is not allowed to brief the court on legal issues.

Because Petitioner is now a registered patent attorney, admitted to the State Bar of California on May 9, 2022, and because Plaintiffs have appealed the $2.7 million award in attorneys' fees, demanding more money (thereby necessitating Defendant's continued participation in the action), Petitioner (alarmed by the outcome of the case and horrified by the undeniably false evidence improperly introduced into evidence) offered to represent Defendant on contingency, early March. Defendant signed a conflict-of-interest waiver in recognition of the potential conflict Petitioner may have in the outcome, retaining Petitioner March 7. Ex. R.

Petitioner applied for *pro hac vice* admission to represent Defendant March 9, 2025. But Plaintiffs objected to Petitioner's application immediately, accusing Petitioner of being unethical and morally incompetent to appear before the court

because of the court's finding of inequitable conduct. Ex. S. The court waited twelve days while important, non-extendible deadlines approached (including the non-extendable Rule 59 and 60 deadlines), and then denied Petitioner's application outright, March 21, 2025.[4]

Petitioner filed for writ of mandamus in this Court March 28, 2025, citing authority which holds at least some sort of hearing is required before denying an attorney admission. *In re Evans,* 524 F.2d 1004, 1007-08 (5th Cir. 1975) ("[i]f a District Court has evidence of behavior that it believes justifies denying an attorney admission pro hac vice, it must set a hearing date and give the attorney adequate notice of all incidents of alleged misbehavior or unethical behavior that will be charged against him . . . . The hearing must be on the record and present the attorney with adequate opportunity to defend himself and his professional reputation"). This Court dismissed the petition without prejudice to recommend filing for reconsideration in the district court. Petitioner did so. Judge Doughty waited another forty-five days (during which interval, Plaintiffs filed to enforce the judgment pending appeal, which Judge Doughty readily granted) and then denied the motion, May 22, again, without any explanation. Ex. T, 158.

---

[4] Due to this prejudicial delay, local counsel reviewed Defendant's Rule 59 and Rule 60 motions over the weekend, adopted them, and filed them March 25, 2025, one day before the deadline.

Due to registration of the judgment in the District of Colorado, in addition to other financial pressures, Defendant was forced into bankruptcy to reorganize. Ex. T, 158. The court's inaction on the one hand, while stoking action on the other, is questionable: at the least, it appears conflicted because the court may moot inquiry into its overreliance on the technical advisor and the attendant due process and Article III violations. Defendant may be liquidated by Plaintiffs – poised as majority creditors with control over two-thirds of the debtor's estate. Plaintiffs could move to dismantle their rival and monopolistically usurp market share. Where false evidence has tainted the proceeding and undue influence of a court-appointed expert is at least plausible, any judgment must be tenuous and should not, therefore, be allowed to ruin an unfairly prejudiced party absent sufficient review.

## REASONS WHY THE WRIT SHOULD ISSUE

The All Writs Act permits this Court to issue "all writs necessary or appropriate in aid of its jurisdiction and agreeable to the usages and principles of law." *In re Google LLC*, 949 F.3d 1338, 1341 (Fed. Cir. 2020) (cleaned up) (quoting 28 U.S.C. § 1651(a)).

A petitioner seeking a writ of mandamus must: (1) "demonstrate a clear and indisputable right to issuance of the writ," (2) "have no other adequate method of attaining the desired relief," and (3) show that mandamus "is appropriate under the

circumstances." *In re Apple Inc.*, 979 F.3d 1332, 1336 (Fed. Cir. 2020) (citing *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380-81 (2004)).

## I.    Indisputable Right to Issuance of the Writ

### a.    Order Petitioner's Admission in the Western District of Louisiana, Monroe Division

Before denying an attorney admission to practice *pro hac vice*, a court must provide a hearing. *In re Evans,* 524 F.2d 1004, 1007-08 (5th Cir. 1975) ("If a District Court has evidence of behavior that it believes justifies denying an attorney admission pro hac vice, it must set a hearing date and give the attorney adequate notice of all incidents of alleged misbehavior or unethical behavior that will be charged against him . . . . The hearing must be on the record and present the attorney with adequate opportunity to defend himself and his professional reputation").

If the admission is denied without due process, mandamus relief should order admission. *Id.* ("In the absence of a complaint rising to a level justifying disbarment, it was outside the discretion of [the Judge] to deny the motion to admit [the attorney] pro hac vice, accordingly, the petition for writ of mandamus is granted" (emphasis added)); *Schlumberger Techs., Inc. v. Wiley,* 113 F.3d 1553, 1559 (11th Cir. 1997) ("[w]e reversed the district court's decision because it failed to comply with the procedural requirement of *Evans*") (citing *Kirkland v. Nat'l Mortgage Network, Inc.,* 884 F.2d 1367, 1372 (11th Cir. 1989) and *In re Evans,* 524 F.2d 1004 (5th Cir. 1975)).

Petitioner submits the court's refusal is unfairly harmful to Defendant. Retaining other counsel is problematic. Prior counsel is now conflicted out as a creditor. There is no risk of entanglement: trial is over. Petitioner (who drafted and prosecuted the '903 Patent and was a witness in the bench trial) is not likely to be called as a witness now. Any remaining actions are procedural and relate to inquiry into the court's overreliance on the technical advisor, which must be resolved.

Grave concern arises from the court's unexplained repeated denial. A district court should not be able to arbitrarily deny admission of a party's choice of counsel. The court has refused Petitioner's admission based on opposing counsel's objection that Petitioner was the patent agent who prosecuted the patent the court has invalidated for alleged inequitable conduct. Dkt. Nos. 990 (Ex. Y) and 1032 (Ex. C, 158). Petitioner *was* named in the finding of inequitable conduct by the court (which, on information and belief, was authored by the technical advisor, not the judge, *supra*). Yet, clearly, Plaintiffs' counsel are not disinterested. Their objection is tactical. Plaintiffs are not harmed by Petitioner's admission. But Defendant is unfairly prejudiced and substantially harmed by denial of counsel of its choice. Further, opposing counsels' repeated threats to disqualify Petitioner as unethical based on alleged conduct more than nine years ago are arguably themselves unethical. ABA Formal Op. 94-383 (July 5, 1994) (threats to file disciplinary charges

against an opponent may violate ABA Model Rules 3.1, 4.1, 4.4, 8.4(b) and 8.4(d) as well as amount to criminal extortion).

At the very least, an appearance of a conflict persists because the district court arguably abdicated its authority to the technical advisor; now, by denying Defendant counsel of its choice, the court forces Defendant (who is undergoing bankruptcy) to find new counsel. Prior counsel can no longer represent Defendant. Defendant is trapped. Meanwhile, Plaintiff continues to unfairly benefit. Consider, the court sat on Defendant's post-judgment motions for more than *ninety days* while granting Plaintiffs' motions to enforce the judgment, even in the face of Plaintiffs' appeal for more fees and the court's significant admission that the technical advisor improperly introduced false evidence into the proceeding. The court denied Petitioner's admission after significant and prejudicial delays that hampered Defendant's ability to properly defend itself. Plaintiff should not be allowed to advantage such proceedings to unfairly dismantle its rival.

Petitioner's admission is necessary because, due to the impact on Petitioner's professional reputation by this – in Petitioner's view, ill-considered – judgment, Petitioner is willing to represent Defendant on contingency (without compromising the debtor's estate). This is arguably in Plaintiffs' interest as creditor. Petitioner, though a relatively new attorney, is at least familiar with the case – certainly more

than other counsel. It is also doubtful other counsel will represent Defendant absent sufficient compensation against the debtor's estate.

We believe the grounds for reversal and retrial are strong – which could allow Defendant to successfully reorganize and exit bankruptcy. However, limited discovery on the court is needed. Petitioner asks this respectable court to order Petitioner's admission so that limited discovery on the court may be performed; in case further post-judgment representation becomes necessary (such as, for example, oral argument regarding Defendant's outstanding Rule 59 Motion, which, after more than ninety days, the court has still not ruled on); and to prevent further unfair benefit leveraged by Plaintiffs in the Western District of Louisiana.

### b.    Order Limited Discovery on the District Court

A court which relies on a technical advisor must provide disclosure as to the nature and extent of the information upon which it relied. *TechSearch LLC v. Intel. Corp.,* 286 F.3d 1360, 1379 (Fed. Cir. 2002) (requiring a court relying on a technical advisor to "make explicit, perhaps through a report or record, the nature and content of the technical advisor's tutelage concerning the technology"). *See also,* FED. R. CIV. P. 53 (governing special masters, who typically can enter opinions and the like on behalf of the court under the supervision of the judge, precisely because they are subjected to the standards of the Rule which requires adequate disclosure).

Here, the court has blatantly refused to provide disclosure required by mandatory authority. The technology in issue is not complex. *See Reilly v. United States,* 863 F.2d 149, 157-58 (1st Cir. 1988) (technical advisors are meant to be "hens-teeth rare," used "sparingly," and "if not a last, a near-to-last resort, to be engaged only where the trial court is faced with problems of unusual difficulty, sophistication, and complexity, involving something well beyond the regular questions of fact and law with which judges must routinely grapple," because "the judge must not be eager to lighten his load without the best of cause"). Instead, it seems as if Woloson was appointed to brief the court on patent law and, basically, to manage the case. But after Judge Tashima's influential dissent in *Association of Mexican-Am. Educators v. State of California,* 231 F.3d 572 (9th Cir. 2000) mandatory authority is explicit: "[A] judge may not appoint a technical advisor to brief him on legal issues." *TechSearch, LLC v. Intel Corp.,* 286 F.3d 1360, 1368 (Fed. Cir. 2002) (emphasis added).

After *TechSearch,* cognizant of due process concerns, other district courts seem to understand the role of a technical advisor. *E.g., Telebuyer, LLC v. Amazon.com, Inc.,* No. 2:13-CV-1677-BJR, 2014 WL 5312275, at *4 (W.D. Wash. Oct. 16, 2014) (technical advisor "shall not (1) brief the Court on legal issues, (2) render conclusions of law, (3) engage in an independent investigation of the legal issues involved in the case"); *DataTreasurey Corp. v. Wells Fargo & Co.,* No. 2:05-

25

CV-291 (DF), 2008 WL 11348369, at *3 (E.D. Tex. Dec. 10, 2008) (The technical advisor should never "attempt to advise the Court on any matter of law"). Technical advisors are not subject to Fed. R. Evid. 706(d) and evade cross-examination. Therefore, a court must be "acutely sensitive to" and "carefully consider[] the due-process concerns posed by the appointment of such an advisor." *Comcast Cable Commc'ns, LLC v. Sprint Commc'ns Co., LP,* No. CIV.A. 12-859, 2014 WL 1329063, at *3 (E.D. Pa. Apr. 2, 2014).

In all cases, the technical advisor's role is meant to be "properly limited to a tutoring function and providing technical education and background information in the technology of the court" to avoid "a risk that some of the judicial decision-making function will be delegated to the technical advisor." *TechSearch,* 286 F.3d at 1379 (Fed. Cir. 2002). "District court judges need to be *extremely sensitive* to this risk and minimize the potential for its occurrence." *Id.* (emphasis added). The court could have appointed a special master, subject to Rule 53. But Rule 53 wasn't followed, either. The court should not be allowed to skirt mandatorily enumerated safeguards by characterizing Woloson as a "technical advisor" while employing him as a private magistrate. As a technical advisor, Woloson was subject to judicial safeguards without which he was arguably able to exert undue influence on the court.

Mandamus relief is necessary because the court continues to refuse to disclose

the nature and content of its *ex parte* communications with Woloson, who almost certainly briefed the court on patent law, evaluated evidence (apparently including Defendant's state of mind) and drafted, reviewed, and revised opinions, orders, findings of fact, and conclusions of law on behalf of the court. He was, essentially, acting as a private magistrate, but one not hired by the court or appointed by elected representatives under Article III. He was appointed, in a day, unilaterally, without any input from the Parties, by Judge Doughty, who also appointed him to two other patent cases in his District where LNC (a notoriously litigious litigant) was also a party. Woloson's pay was subject to the litigation and taxed to the Parties (and ultimately, to Defendant). The concerns set forth by Judge Tashima's dissent in *Mexican-Am. Educators* are real. This Court adopted them for the same reasons. *TechSearch*, *passim*.

The court admitted that Woloson "served as a resource to the [c]ourt" because he "would be knowledgeable about the technical and legal issues in the case" (Dkt. No. 1037, 5 and 7; Ex. H); that Woloson provided "input and the evaluation of evidence submitted for review" (*id.*, 5); and, most troublingly of all, regarding the false evidence improperly introduced into the record, "the screen-capture [mispositioning a huge "fold" in the Platinum Pets mat] was taken by Woloson during the playing of the video at trial" (*id.*, 10).

There is, then, "risk that some of the judicial decision-making function" was impermissibly "delegated to the technical advisor." *TechSearch*, at 1379.

The court repeatedly brushes Defendant's concerns aside, deflecting potential serious violations of due process and clear error by now claiming that Defendant failed to timely object, citing the mandate rule as foreclosing the issue (Dkt. 1037, *passim* (Ex. H)). But Defendant did object. And, tellingly, the issue was not subject to this Court's remand and is, therefore, arguably within the compass of review. *See, e.g., Sprague v. Ticona Nat'l Bank,* 307 U.S. 161, 168 (1931) ("While a mandate is controlling as to the matters within its compass, on the remand a lower court is free as to other issues"); *Laitram Corp. v. NEC Corp.,* 115 F.3d 947, 951 (Fed. Cir. 1997) (the mandate rule "is actually applicable only to those issues decided by necessary implication"); and *Patton v. Sec'y of Health & Human Servs.,* 25 F.3d 1021, 1030 (Fed. Cir. 1994) (Rule 60(b) as a remedial provision is to be "liberally construed for the purpose of doing substantial justice"). Importantly, the scope of the court's error cannot be subject to the mandate rule because the enormity of the error has yet to be made known. And – considering the error may be as prejudicial as a reasonable person reviewing the evidence might reasonably believe – retrial may be necessary. *See Stauble v. Warrob, Inc.,* 977 F.2d 690, 696-98 (1st Cir. 1992) ("the district court, understandably frustrated with the snail's pace of the litigation, referred the entire

case to a special master for findings of fact and conclusions of law, with no boundaries on the master's authority and no provision for anything remotely resembling *de novo* review. The court lacked the authority to handle the case in this fashion. Nonconsensual reference of fundamental issues of liability to a master for adjudication is not consonant with either Rule 53 or Article III" and ordering retrial because "[t]he Constitution offers no other principled choice").[5] Arguably, the *TechSearch* safeguards for a technical advisor are meant to be at least as stringent. Yet they are lacking in the present case.

The court seemingly will not countenance inquiry which may subject it to embarrassment by its own error. Relief by mandamus is necessary to compel the limited discovery by which the scale and impact of the court's error can be properly ascertained.

Further, the court should be ordered to reveal the source of a photograph taken depicting a "recreation" of Plaintiffs' expert, Mr. Hubbard's, remarkable demonstration at trial, showing someone (Mr. Hubbard?) picking up the Platinum

---

[5]    While Rule 53 applies to special masters, since Mr. Woloson was arguably acting like a special master in briefing the court on legal issues, authoring opinions, finding of facts and conclusions of law, and evaluating evidence, the court's denial of Defendant's request for *de novo* review was arguably improper and plain error. *See* Fed. R. Civ. P. 53(3) (unless a lower standard is stipulated by the parties and the court, "[t]he court <u>must</u> decide de novo all objections to findings of fact made or recommended by a master") (emphasis added).

Pets mat in such a way as, for an indeterminate time, to raise the glass tabletop a few inches. Dkt. No. 974, 70 (Ex. P). This remarkable demonstration has not been replicated by Defendant, Defendant's expert, or (on information and belief) anyone else. Dkt. No. 836 at 1436:15-1437:14 (Ex. U). (Notably, Mr. Hubbard admitted at trial that the Platinum Pets could be picked up at places other than the outer edge and that it did not, therefore, read over the scope of the '903 Patent's initial claim. Dkt. No. 832 at 229:22-230:7 (Ex. V). Hubbard also recognized that his skillful manipulation of the Platinum Pets mat was extraordinary. *Id.* 229:12-13 and 24-25 ("That's enough to lift the glass, *depending on how you pull it*" and "if you pull it up with a certain force, it's going to release [*i.e.,* not self-seal]") (emphasis added).

This curious photo must have been taken during trial, presumably after hours or during recess. Significantly, Defendant was *not* present when the image was taken and improperly entered into evidence by the court.

### c.   Stay the Enforcement of the Judgment Without Supersedeas Bond Until Appellate Review is Concluded

Due to the potential for undue influence and undue bias suggested by extra-record evidence introduced by the technical advisor and court (improbably accidental), which reasonably prejudiced Defendant, Petitioner respectfully suggests enforcement of the judgment should be stayed pending appellate review.

While the automatic stay provided by section 362 of the Bankruptcy Code is in effect, the reality is the stay will likely be lifted before the conclusion of appellate review of this case. Petitioner respectfully submits that Plaintiff should not be able to realize a judgment that may be subject to significant violations of due process, undue influence of a court-appointed neutral (who may have been, in fact, unduly biased for some reason against Defendant), and the court's abdication of Article III authority. By the time appellate review is concluded, Defendant will likely have been dissolved and its assets liquidated in satisfaction of the judgment. Should appellate review affirm egregious abuses of process and the court's clear error in its procedure appointing and employing Woloson; and the court's failure to instate sufficient minimum safeguards; and find substantial harm from Woloson's introduction of manifestly false and highly prejudicial evidence, as well as extra-record evidence (the photograph of Plaintiffs "recreating" Hubbard's remarkable demonstration); it will be impossible to put the pieces back together: manifest injustice will result. Bankruptcy proceedings will nonetheless preserve the debtor estate; a stay of enforcement of the judgment merely ensures the protection under section 362 is extended during review by competent authority. And, since the pending bankruptcy will preserve the estate, supersedeas bond is unnecessary.

The factors in *Hilton v. Braumskill*, 481 U.S. 770, 776 (1987) support a stay

absent supersedeas bond in this case. In *Hilton*, the Supreme Court held that a stay absent supersedeas bond may be granted where 1. the stay applicant has made a strong showing that it is likely to succeed on the merits; 2. the applicant will be irreparably injured absent a stay; 3. the stay will not substantially injure the other parties interested in the proceedings; and 4. it is in the public interest.

Petitioner respectfully submits, each of these factors weights in Defendant's favor. 1. The court has admitted Woloson introduced false evidence, contrary to his affidavit and mandatory authority (*supra*). 2. Plaintiffs will almost certainly move to liquidate Defendant when the automatic stay pursuant to section 362 is lifted – if the judgment rests on a fundamentally unfair process, this is irreparable harm. 3. Plaintiff is the major creditor. Plaintiff seeks to recover its legal fees after it litigated this case zealously and unremittingly. The case has lasted nine years. The judgment of attorney's fees dwarfs any damages. Plaintiff is a huge multi-national: it will not be substantially injured by this Court ordering a stay on enforcement of the judgment. 4. Controlling undue influence of a court-appointed expert to ensure constitutional due process is in the public interest. Constitutional rights are a public good. Additionally, Defendant was an award-winning, highly-praised start-up which drew national attention and accolades for its award-winning Happy Mat® and innovative design in the child feeding industry (which is why Plaintiffs appropriated those

designs). Its destruction by a close competitor tends monopolistically to deprive

consumers of market choice. Thus, a stay is also in the public interest.

Mandamus relief is necessary. The court has already granted Plaintiffs'

motion to register the judgment over Defendant's arguments that the judgement

should be stayed absent supersedeas bond pending appellate review due to real due

process concerns. Dkt. No. 1035 (Ex. AB). Further, absent Petitioner's admission,

Defendant will need new counsel to request the stay absent supersedeas bond,

which, for the reasons already stated (*supra*), is untenable in the present situation.

Thus Defendant is unable to ask the district court to reconsider its order enforcing

the judgment against Defendant because its prior counsel is conflicted out and its

chosen counsel (Petitioner) has been denied admission. Clearly, this Court is the

only avenue for Defendant to seek relief.

## II.    Petitioner Has No Adequate Alternative Method of Obtaining Relief

A mandamus petitioner must also show that it has "no other adequate means

to attain the relief [it] desires." *Cheney*, 542 U.S. at 380 (citation omitted).

Petitioner has no other recourse which can timely ensure justice here. The

district court has repeatedly silenced Petitioner outright, often without any

explanation. Petitioner should be allowed to represent Defendant in limited

discovery against the court, and for other post-judgment proceedings as may arise to ensure Defendant's interests are protected and Plaintiffs do not continue to leverage unfair benefit.

Undue bias is apparent. The judgment rests, in significant part, on false evidence. The court now admits this but deflects by claiming Defendant waived its right to a fair trial by failing to timely object. But Defendant *did* object (Dkt. No. 546, 9-11 (Ex. Z). And the court never disclosed the nature or content of the *ex parte* communications the court has entertained with the technical advisor, who was meant to be tutoring the court in the technological complexities of the surface contact self-sealing integrated tableware and dining mat, as required by mandatory authority, not briefing the court on legal issues. Consider, also, the court only admitted that the technical advisor introduced the false evidence into the record on July 1, 2025 (Ex. H, 10).

Woloson input over 100 hours in preparing the court's final judgment. That judgment *is* ripe. Nonetheless, the court continues to silence inquiry into this important issue: it denied Defendant's motion for *de novo* review due to impermissible overreliance on the technical advisor (Dkt. No. 548, Ex. T); it denied Petitioner's motion to intervene (without explanation) and Petitioner's motion to strike the false evidence (mooted by the denied intervention, without explanation)

(Dkt. No. 966, Ex. T, 151); it denied Petitioner's reconsideration regarding Petitioner's *pro hac vice* admission (which Petitioner filed with instruction from this Court), again, without explanation (Dkt. No. 1008, Ex. C, 155); it denied Defendant's demand for limited discovery on the court regarding improperly submitted evidence, again, without explanation (Dkt. No. 1031, Ex. C, 158); it denied Defendant's Rule 60 motion for relief from judgment in which Defendant expressly requested information regarding the nature and content of Mr. Woloson's *ex parte* communications with the court (Dkt. No. 1037, Ex. H).

The court has repeatedly and effectively foreclosed all avenues of inquiry into its potential error, consistently silencing Defendant, ostensibly to prevent disclosure of its error, perhaps to avoid embarrassment.

Counsel's admission to practice before the Western District of Louisiana is necessary to defend Defendant's constitutional right to due process and to determine the magnitude of potential harm to Defendant. *E.g., Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.,* 818 F.3d 1320, 1324 (Fed. Cir. 2016) ("[p]roof that the result of the case would have been different but for the fraud or misconduct is not required; instead Rule 60(b)(3)[6] is aimed at judgments which

---

[6] Rule 60(b)(3) refers to misconduct by an opposing party – here, misconduct is by a court-appointed expert, and adopted by the court itself, arguably a much worse situation.

are fairly obtained, not at those which are factually incorrect.")

The court should be ordered to admit Petitioner to represent Defendant. The court should be ordered to disclose its communications with Woloson for appellate review. Defendant should be allowed to conduct limited discovery on the court to ascertain the extent of the undue influence of the technical advisor. And, considering the substantial harm resultant from a proceeding where a technical advisor is allowed to usurp authority reserved for an Article III judge, the judgment should be stayed pending appellate review absent supersedeas bond.

### III.    Mandamus is Appropriate

Because the district court has repeatedly denied Petitioner admission to represent its client without due process, as required by mandatory authority, Petitioner submits writ of mandamus is appropriate to order Petitioner's admission. Petitioner has applied for admission, which was denied, and requested reconsideration pursuant to instruction from this Court, which, after forty-five days, was also denied without explanation. The court has refused to disclose the nature and content of its communications with its technical advisor, on whom it seems to have over-relied. Disclosure is required. There is manifest evidence of undue bias: The court has admitted that the technical advisor impermissibly introduced false evidence into the record. The court appears to have recreated a demonstration at

trial by photographing a redemonstration after hours or at recess without defense counsel present, which was then also improperly introduced as evidence and entered into the court's findings of fact and conclusions of law. Defendant is unfairly prejudiced by the court's conduct. If this Court does not order the lower court to act otherwise, manifest injustice will rest. Mandamus is not just appropriate; it is necessary.

## CONCLUSION

For the above reasons, Petitioner respectfully submits the Court should issue a writ of mandamus to Order the district court admit Petitioner *pro hac vice* to represent Defendant, Order the court to disclose the nature and extent of its communications with Woloson, and stay enforcement of the judgment pending appellate review.

Dated: July 4, 2025
Stoneleigh Abbey, U.K.

Respectfully submitted,

/s/ Ben Williams
Ben Williams
Williams Intellectual Property
*Attorney for Defendant*
1100 W Littleton Blvd
Ste 440
Littleton, CO 80120
o. (720) 328-5343
f. (720) 328-5297

ben@wip.net

## CERTIFICATE OF COMPLIANCE

This petition complies with the type-volume limitation of FRAP 21(d)(1) because it contains 7,757 words, excluding the parts of the petition exempt by FRAP 21, FRAP 32, and FED. CIR. R. 32.

This petition complies with the typeface requirements of FRAP 32(a)(5) and the type style requirements of FRAP 32(a)(6) because it has been prepared in 14-point Equity typeface, designed by Matthew Butterick for legal briefs, using Microsoft Word ver. 16.95.1 with about ten characters per inch.

Dated: JULY 4, 2025
STONELEIGH ABBEY, U.K.

Respectfully submitted,

/s/ Ben Williams
Ben Williams
Williams Intellectual Property
*Attorney for Defendant*
1100 W Littleton Blvd
Ste 440
Littleton, CO 80120
o. (720) 328-5343
f. (720) 328-5297
ben@wip.net

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate Case Management/Electronic Case File (CM/ECF) system on JULY 4, 2025.

A copy of the foregoing was served upon the following counsel via the Case Management/Electronic Case File (CM/ECF) system for the Western District of Louisiana:

**Hartwell Powell Morse , III**
NubyLaw
3030 Aurora Ave 2nd Fl
Monroe, LA 71201
318-338-3108
Email: hartm@nuby.com
*Attorney for Plaintiffs*

**A'Dair Ragan Flynt**
Liskow & Lewis (NO)
701 Poydras St Ste 5000
New Orleans, LA 70139
504-556-4154
Fax: 504-556-4108
Email: aflynt@dcflyntmw.com
*Attorney for Plaintiffs*

**Alexander James Baynham**
Liskow & Lewis (NO)
701 Poydras St Ste 5000
New Orleans, LA 70139
504-556-4183
Email: ajbaynham@liskow.com
*Attorney for Plaintiffs*

**Carey Lyon Menasco**
Liskow & Lewis (NO)
701 Poydras St Ste 5000
New Orleans, LA 70139

504-581-7979
Fax: 504-556-4108
Email: clmenasco@liskow.com
*Attorney for Plaintiffs*

**Carol Welborn Reisman**
Liskow & Lewis (NO)
701 Poydras St Ste 5000
New Orleans, LA 70139
504-581-7979
Fax: 504-556-4108
Email: cwreisman@liskow.com
*Attorney for Plaintiffs*

**George Denegre, Jr**
Liskow & Lewis (NO)
701 Poydras St Ste 5000
New Orleans, LA 70139
504-581-7979
Fax: 504-556-4108
Email: gdenegre@liskow.com
*Attorney for Plaintiffs*

**Holly Christine White**
Lewis Roca et al
1200 17th St Ste 3000
Denver, CO 80202
303-628-9572
Fax: 303-623-9222
Email: hwhite@lrrc.com
*Attorney for Plaintiffs*

**Jan P Christiansen**
Christiansen Law Firm
2483 Tower Dr Ste 1
Monroe, LA 71201
318-366-2259
Fax: 318-807-0926

Email: jpchris@christiansenlawfirm.net
*Attorney for Defendant*

**Jennifer K Fischer**
Fischer & Fischer
1777 S Harrison St Ste 1500
Denver, CO 80210
303-756-2500
Fax: 303-756-2506
Email: jennifer@fischeresq.com
*Attorney for Defendant*

**Ronnie Fischer**
Fischer & Fischer
1777 S Harrison St Ste 1500
Denver, CO 80210
303-756-2500
Fax: 303-756-2506
Email: ronnie@fischeresq.com
*Attorney for Defendant*

A copy of the foregoing was also provided to the following using the Case Management/Electronic Case File (CM/ECF) system for the Western District of Louisiana:

**Hon. Judge Terry A. Doughty**
United States District Court for the Western District of Louisiana
Monroe Division
201 Jackson St
Ste 215
Monroe, LA 71201

Dated: JULY 5, 2025                           Respectfully submitted,
STONELEIGH ABBEY, ENGLAND

                                              /s/ Ben Williams
                                              Ben Williams
                                              Williams Intellectual Property
                                              *Attorney for Defendant*

1100 W Littleton Blvd
Ste 440
Littleton, CO 80120
o. (720) 328-5343
f. (720) 328-5297
ben@wip.net

# ADDENDUM OF RECORD MATERIAL AND EXHIBITS

## EXHIBIT A

### ORDER
In re. BEN WILLIAMS
On petition for Writ of Mandamus to the United States District Court for the Western District of Louisiana in No. 3:16-cv-00777-TAD-JPM, Judge Terry A. Doughty
Case: 25-124

## EXHIBIT B

**Mr. Williams's Motion to Reconsider Denial of Admission Pro Hac Vice and to Stay Proceedings Pending Disposition of the Same**
Western District of Louisiana, Mondor Division No. 3:16-cv-00777-TAD-JPM
Dkt. No. 1006

## EXHIBIT C

**Civil Docket for Case No. 3:16-cv-00777-TAD-JPM**
Western District of Louisiana, Mondor Division

## EXHIBIT D

Copy of Petitioner's Certificate of Good Standing in the State Bar of California and Letters of Reference from:

1. J. Kieth Gates, Louisiana Bar No. 31171, Municipal Judge, Winnfield City Court, Winnfield Louisiana, with whom Petitioner was privileged to serve on a jurisprudence committee for a national fraternal organization of which Mr. Gates and Petitioner are also members.

2. Stephen Doan, attorney with whom Petitioner is privileged to serve on a legal committee for a national fraternal organization, of which Mr. Doan and Petitioner are also members.

3. [Email] Jeffrey Nelson, North Dakota Bar No. 04199. Mr. Nelson was a staff member of the State of North Dakota Legislative Council (traveling in Egypt and without good internet access, hence email via his partner, Lisa). Mr. Nelson serves on the Knights Templar Eye Foundation ("KTEF") board, a large 501(C)(3) organization funding research to cure childhood blindness, upon which board Petitioner is honored to also serve. Mr. Nelson and Petitioner are members of the fraternal organization which founded the charity in 1956.

4. James Winzenried, attorney with whom Petitioner is privileged to serve on a legal committee for a national fraternal organization, of which Mr. Winzenried and Petitioner are also members.

5. Stephen Hess, author of *Colorado Handbook on Civil Li/ga/on*, West's Colorado Practice Series, and many scholarly treatises, periodicals, and articles on civil procedure, real estate and construction law and, interestingly, international sports law, with whom Petitioner was fortunate to work on a recent arbitration and with whom Petitioner oftentimes consults.

6. David Studley, attorney with whom Petitioner is honored to serve on the KTEF board. Mr. Studley was chairman of the legal committee, before Petitioner assumed that role recently. Mr. Studley and Petitioner are members of the fraternal organization which founded the charity in 1956.


## EXHIBIT E

**Mr. Williams's Timely Application to Intervene as a Non-Party for the Limited Purpose of Contending Allegations of Inequitable Conduct**
Western District of Louisiana, Mondor Division No. 3:16-cv-00777-TAD-JPM
Dkt. No. 959


## EXHIBIT F

**Appeals from the United States Court for the Western District of Louisiana in No. 3:16-cv-00777-TAD-JPM, Judge Terry A. Doughty**
Decided April 12, 2024

Case No. 22-1905

## EXHIBIT G

**Motion Under Rule 60 to Strike Evidence Misrepresented by LNC and to Vacate All Findings of Fact and Conclusions of Law Reliant on that Evidence**
Western District of Louisiana, Mondor Division No. 3:16-cv-00777-TAD-JPM
Dkt. No. 959-8

## EXHIBIT H

**Memorandum Order Denying Defendant's Rule 60 Motion**
Western District of Louisiana, Mondor Division No. 3:16-cv-00777-TAD-JPM
Dkt. No. 1037

## EXHIBIT I

**Ex Parte Reexamination Certificate**
USPTO
Reexamination No. 90/020,135 for U.S. Patent No. 9,462,903

## EXHIBIT J

**Eazy-PZ's Motion for New Trial Pursuant to Rule 59(a) and (c)**
Western District of Louisiana, Mondor Division No. 3:16-cv-00777-TAD-JPM
Dkt. No. 991

## EXHIBIT K

**Response to First Non-Final Action**
USPTO
Reexamination No. 90/020,135 for U.S. Patent No. 9,462,903

**OVER**

## EXHIBIT L

### SECOND DECLARATION OF CAROL WELBORN REISMAN IN SUPPORT OF LNC'S SUPPLEMENTAL MOTION FOR ATTORNEY'S FEES
Western District of Louisiana, Mondor Division No. 3:16-cv-00777-TAD-JPM
Dkt. No. 970-3


## EXHIBIT M

### APPOINTMENT ORDER FOR SCOTT WOLOSON
Western District of Louisiana, Mondor Division No. 3:16-cv-00777-TAD-JPM
Dkt. No. 273


## EXHIBIT N

### AFFIDAVIT OF SCOTT WOLOSON
Western District of Louisiana, Mondor Division No. 3:16-cv-00777-TAD-JPM
Dkt. No. 272


## EXHIBIT O

### CASES ON WHICH SCOTT WOLOSON HAS SERVED AS A TECHNICAL ADVISOR OR SPECIAL MASTER
As listed on his website
Showing billing, and time of appointment for cases where said information was accessible via West Law


## EXHIBIT P

### SECOND AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW FOLLOWING REMAND FROM THE FEDERAL CIRCUIT
Western District of Louisiana, Mondor Division No. 3:16-cv-00777-TAD-JPM
Dkt. No. 974


## EXHIBIT Q

### INVOICES FROM SCOTT WOLOSON

Western District of Louisiana, Mondor Division No. 3:16-cv-00777-TAD-JPM
Dkt. Nos. 464-1, 492-1, 532-1, 655-1, 729-1, 803-1, 829-1, 854-1, 935-1, and 978-1

## EXHIBIT R

**CONFLICT OF INTEREST WAIVER**

## EXHIBIT S

**OPPOSITION TO BENJAMIN WILLIAMS'S APPLICATION TO CONTINUE PRO HAC VICE IN REPRESENTATION OF DEFENDANT [ECF NO. 980]**
Western District of Louisiana, Mondor Division No. 3:16-cv-00777-TAD-JPM
Dkt. No. 983

## EXHIBIT T

**MEMORANDUM ORDER**
Western District of Louisiana, Mondor Division No. 3:16-cv-00777-TAD-JPM
Dkt. No. 548

## EXHIBIT U

**REPORTER'S OFFICIAL TRANSCRIPT OF THE BENCH TRIAL BEFORE THE HONORABLE TERRY A. DOUGHTY UNITED STATES DISTRICT JUDGE, VOL. VII OF VIII**
Western District of Louisiana, Mondor Division No. 3:16-cv-00777-TAD-JPM
Dkt. No. 836

## EXHIBIT V

**REPORTER'S OFFICIAL TRANSCRIPT OF THE BENCH TRIAL BEFORE THE HONORABLE TERRY A. DOUGHTY UNITED STATES DISTRICT JUDGE, VOL. III OF VIII**
Western District of Louisiana, Mondor Division No. 3:16-cv-00777-TAD-JPM
Dkt. No. 832

**OVER**

## EXHIBIT W

### Eazy-PZ's Memorandum of Points and Authorities for its Rule 60(b)(4) and 60(b)(6) Motion Due to Undue Influence of Technical Advisor

Western District of Louisiana, Mondor Division No. 3:16-cv-00777-TAD-JPM
Dkt. No. 992-1

## EXHIBIT X

### Amended Findings of Fact and Conclusions of Law

Western District of Louisiana, Mondor Division No. 3:16-cv-00777-TAD-JPM
Dkt. No. 931

## EXHIBIT Y

### Order Denying Pro Hac Vice Admission

Western District of Louisiana, Mondor Division No. 3:16-cv-00777-TAD-JPM
Dkt. No. 990

## EXHIBIT Z

### Defendant Eazy-PZ, LLC's Memorandum in Support of its Motion for Reconsideration of Obviousness Ruling

Western District of Louisiana, Mondor Division No. 3:16-cv-00777-TAD-JPM
Dkt. No. 546-1

## EXHIBIT AB

### Memorandum Order Granting Enforcement of Judgment

Western District of Louisiana, Mondor Division No. 3:16-cv-00777-TAD-JPM
Dkt. No. 1035